1998 OK CIV APP 35

1998 OK CIV APP 35

**In re M.B. and A.B., alleged deprived children;**

**James R. BIBBEE, Appellant,**

v.

**STATE of Oklahoma ex rel. DE-PARTMENT OF HUMAN SERVICES, Appellee.**

**No. 90364.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 27, 1998.

Linda McKnight Pickens, Enid, for Appellant.

Paul Hesse, Assistant District Attorney, Enid, for Appellee.

### *MEMORANDUM OPINION*

CARL B. JONES, Vice Chief Judge:

¶1 Appellant James Bibbee suffered first and second degree burns on most of his body as the result of an oil well fire in 1984. He settled his subsequent personal injury suit by agreeing to receive periodic lump sum payments every five years beginning in 1991 until 2011 and small monthly annuity payments every year beginning in March, 1986.

¶2 Appellee Department of Human Services [DHS] apparently[1] commenced a proceeding in 1995 to obtain temporary custody of the two minor children of James and his ex-wife Mona Bibbee, alleging the children were deprived. The record on appeal contains only the trial court's "Order Setting Child Support" entered in October, 1997, and the transcript of a hearing conducted by the trial court earlier that month on DHS's appli-

---

1. We say "apparently" because most of the relevant instruments are not included in the record, and so we must deduce what has transpired below from the trial court's appearance docket.

cation to determine the proper amount of support which the children's parents should pay. Appellant has brought this appeal from the trial court's order. He argues the trial court erred (1) by including in his gross income a prorated amount from the settlement payment he received in 1996 and (2) by refusing to find that he was physically incapacitated and also unable to earn wages because he was in prison.

¶ 3  Among Appellant's exhibits at the October, 1997, hearing were copies of the settlement documents from his personal injury suit setting forth monthly annuity payments which showed that Appellant had been paid $2,609.54 per month starting in March, 1995, which increased to $2,687.83 in March, 1996, and then to $2,768.46 in March, 1997. Appellant was paid a lump sum of $150,000 on February, 15, 1996, and expected to receive $200,000.00 on February 15, 2001, $300,-000.00 on February 15, 2006, and $350,000.00 on February 15, 2011.

¶ 4  The trial court prorated the 1996 payment over five years, i.e. $30,000 per year, when it calculated Appellant's share of child support. Thus, the trial court determined that Appellant's monthly income was $5,455.21,[2] and from that figure calculated his support obligation at $822.16 per month. Appellant contends the trial court should not have included any amount to which he was entitled from the settlement of his personal injury case.

¶ 5  Child support remains a matter of equitable cognizance, notwithstanding that the actual calculation of support involves the application of mandatory, presumptive statutory guidelines.[3]  On appeal, we must therefore review the entire record and determine whether the trial court's support order is just and equitable. If so, we must affirm.

If not, we must calculate the proper amount of support. *Thrash v. Thrash,* 1991 OK 32, ¶ 12, 809 P.2d 665, 668; *Brown v. Brown,* 1980 OK 35, ¶ 5, 607 P.2d 1358, 1359.

¶ 6  Appellant contends that federal tax statutes exclude "damages received . . . on account of personal injuries or sickness" from taxable gross income, 26 U.S.C. 104(a)(2), and that the Legislature intended to incorporate federal tax law in the relevant Oklahoma statute defining income for purposes of child support calculation, 43 O.S. Supp.1995 § 118(B)(2).[4]  We agree with Appellant's first premise, but we reject his second and so reject his conclusion. The phrases "gross income" and "adjusted gross income" as used in § 118 do not necessarily mean the same thing as they mean in the Internal Revenue Code. Section 118(B)(2) defines "gross income" to include "income from any source, *except as excluded in this act* . . ." [emphasis added]. As one Pennsylvania court stated:

> We are not persuaded that the tax definitions of income are controlling with regard to defining income for purposes of support. Tax law contains many preferences and definitions for fiscal and other purposes which have no relationship to support. We specifically have held that taxable income is not the same as net income used to determine support obligations. *See Flory v. Flory,* 364 Pa.Super. 67, 527 A.2d 155[, 157] (1987) (it is actual income and not taxable income which constitutes the basis for calculating support). Moreover, the support law contains no reference to tax law.

*Darby v. Darby,* stated: 455 Pa.Super. 63, 686 A.2d 1346, 1348–49 (1996), *appeal denied,* 548 Pa. 670, 698 A.2d 594 (1997). The Court of Appeals in Illinois reached the same result

---

**2.**  The cited figure included a small amount of interest income.

**3.**  In *Department of Human Services v. Glasby,* 1993 OK CIV APP 126, 858 P.2d 1291 (1993), Division II of this Court held, "the mandatory, presumptive nature of the [child support] guidelines overrides the former equitable power of the court to set child support, *except* where some specific inequity to a party or some specific detriment to the child's best interest is found to result from the application of the guidelines." *Id.,* 1993 OK CIV APP 126 at ¶ 10, 858 P.2d at 1295

(emphasis original). The equitable powers of the trial court are therefore displaced *only* in the way it must calculate support when given adjusted income figures for both parents. Because this case does not involve a deviation from the child support calculation required by the guidelines, the trial court's action must be judged as if it exercised its equitable powers.

**4.**  Section 118(B)(2) was amended in 1997, but none of the amendments were effective when the trial court rendered its order, and in any event do not appear relevant to the present case.

in *In re Marriage of Dodds,* 222 Ill.App.3d 99, 164 Ill.Dec. 692, 583 N.E.2d 608 (1991), *appeal denied sub nom. Dodds v. Dodds,* 144 Ill.2d 632, 169 Ill.Dec. 140, 591 N.E.2d 20 (1992), holding that the entire net amount of a tort settlement was properly included as income justifying an increase in the recipient's child support obligation:

> As for respondent's argument that we should look to the definitions of "income" contained in other Illinois statutes and the Internal Revenue Code, we do not find these authorities persuasive regarding the issue before us. "[S]eparate acts with separate purposes need not define similar terms in the same way, but, rather, the same words may mean one thing in one statute and something different in another, depending upon the connection in which the word is used, the object or purpose of the statute and the consequences which probably will result from the proposed construction." [citation]

*Marriage of Dodds,* 164 Ill.Dec. at 694, 583 N.E.2d at 610. (We note also that the court in *Dodds* prorated the settlement amount over a twelve-month period.)

¶ 7   Because § 118 does not expressly incorporate the exceptions from gross income which apply under federal tax law, we decline to read those exceptions into the statute. We therefore hold that the trial court did not err by considering amounts received by Appellant from settlement of his personal injury claim as income for purposes of fixing his child support obligation. We are persuaded that this result is consistent with the broad remedial purpose of the child support statutes, to provide support for children according to parents' ability to pay.

¶ 8   Our opinion in *Spann v. Spann,* 1992 OK CIV APP 150, 852 P.2d 826, *cert. dismissed,* is distinguishable. Appellant cites that case to suggest that the proceeds of his settlement were his separate property. We held in *Spann* that money the ex-husband received for personal injuries and for workers' compensation disability benefits was his separate property, not subject to division by the trial court in a divorce action. Similarly distinguishable is *Thomas v. Thomas,* 1996 OK CIV APP 151, 932 P.2d 54, also cited by Appellant. The issue in *Thomas* was again related to division of property in a divorce—

whether principal received from the sale of an inherited house were separate property or should be included in the marital estate. We do not find either of these cases instructive on the issue presently before this Court regarding inclusion or exclusion of tort settlement money from "gross income" for purposes of calculating child support.

¶ 9   Appellant has been incarcerated since 1992. In his petition in error he asserted error by the trial court's refusal to consider him physically disabled and unable to earn wages because of his incarceration. Appellant has not included any argument or citation of authority on that point in his brief, and so has waived that claim of error. *Ruzika v. Rent City of Altus,* 1997 OK CIV APP 17, ¶ 2, 939 P.2d 23, 24, *cert. denied.*

¶ 10   The trial court's order determining child support is affirmed.

¶ 11   AFFIRMED.

JOPLIN, P.J., and GARRETT, J., concur.